# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH MULL, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>GOTHAM DISTRIBUTING CORPORATION, MVD ENTERTAINMENT GROUP, AND OLD SCHOOL VENTURES, INC., INDIVIDUALLY AND COLLECTIVELY D/B/A OLDIES.COM<br><br>    Defendants. | NO. 2:24-cv-06083-GJP<br><br>JUDGE GERALD J. PAPPERT |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT OLD SCHOOL VENTURES, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................. 1

II.  FACTUAL BACKGROUND ............................................................................... 1

III. LEGAL STANDARD .......................................................................................... 3

IV.  ARGUMENT ....................................................................................................... 3

    A.   **The FAC Does Not Allege that Old School Knowingly Disclosed PII to Meta as Defined in the VPPA** ............................................................. 5

      *1)   The FAC Does Not Plausibly Allege that an Ordinary Person Could Readily Identify a Specific Person and Particular Video They Watched* ............................................. 5

      *2)   The FAC Does Not Allege that Old School Made a Disclosure to Meta* ................ 9

      *3)   Any Disclosure to Meta was not "Knowing" by Old School* ................................. 9

    B.   **The FAC Does Not Allege that Old School Knowingly Disclosed PII by Allegedly Sharing the Mailing List** ....................................................... 11

V.   CONCLUSION .................................................................................................. 13

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................9, 14, 17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................................................9

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
  2017 WL 3727230 (S.D.N.Y. Aug. 11, 2017) .........................................................................16

*Chutich v. Green Tree Acceptance, Inc.*,
  1993 WL 173813 (D. Minn. Apr. 19, 1993) ............................................................................16

*Eichenberger v. ESPN, Inc.*,
  876 F.3d 979 (9th Cir. 2017) .......................................................................................11, 13, 16

*In re Hulu Privacy Litig.*,
  86 F. Supp. 3d 1090 (N.D. Cal. 2015) ...............................................................................14, 16

*In re Nickelodeon Consumer Priv. Litig.*,
  827 F.3d 262 (3d Cir. 2016) .............................................................................................. passim

*Phillips v. County of Allegheny*,
  515 F.3d 224 (3d Cir. 2008) .......................................................................................................9

*Solomon v. Flipps Media, Inc.*,
  2025 WL 1256641 (2d Cir. May 1, 2025) ........................................................................ passim

**Statutes**

18 U.S.C. § 2710 ................................................................................................................10, 15, 17

Video Privacy Protection Act, 18 U.S.C. § 2710 ................................................................... passim

**Other Authorities**

Federal Rules of Civil Procedure Rule 12(b)(6) ....................................................................7, 9, 14

Defendant Old School Ventures, Inc. ("Defendant" or "Old School") respectfully submits this memorandum of law in support of its motion for an order pursuant to Federal Rules of Civil Procedure Rule 12(b)(6) dismissing Plaintiff Joseph Mull's ("Plaintiff") First Amended Class Action Complaint (ECF No. 19; "FAC") in full and with prejudice.

## I.    INTRODUCTION

Plaintiff accuses Old School of violating the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), by using the commonplace Meta Pixel, which is a ubiquitous tool in the e-commerce ecosystem, as well as making a mailing list available for rental or purchase. Plaintiff fails to state a claim for multiple reasons. First, Old School did not send any personally identifiable information ("PII") to Meta Platforms, Inc. a/k/a Facebook ("Meta"), and to the extent any information *was* sent to Meta, it could not be deciphered by an "ordinary person." Second, Plaintiff does not sufficiently allege that any PII was shared via the alleged disclosure of the Oldies.com mailing list. For these reasons, the Court should grant Old School's Motion to Dismiss the FAC.

## II.   FACTUAL BACKGROUND

Old School operates Oldies.com, a website offering nostalgic and rare music and movies for sale. *See* FAC at ¶¶ 20, 51.

On August 3, 2023, Plaintiff purchased a video from Oldies.com. *See id.* at ¶ 12. Plaintiff alleges that Oldies.com uses a "snippet of programming code" called the "Meta Pixel," which transmits certain information of website users to third-party Meta. *Id.* at ¶ 4. Specifically, Plaintiff alleges that when he made a purchase on Oldies.com, his Facebook ID ("FID") was disclosed to Meta along with the specific title of the video he purchased, the URL where that video is available for purchase, and other information about him. *See id.* at ¶ 14. Plaintiff further claims that after his purchase, Old School allegedly disclosed information about the materials he purchased to

1

unspecified "data appenders, data aggregators, data brokers, data cooperatives, aggressive marketing companies, and various third-party renters and exchangers of this data." *Id*. at ¶ 15.

Plaintiff does not allege that Old School disclosed to Meta his purchase history together with his name, photograph, telephone number, or any other information that is typically considered "personally identifying." Instead, he baldly states he has a Facebook account and profile, *see id*. at ¶ 11, and that anyone with "a person's" FID and the title or URL of video material that "the person" purchased could learn the identity of "the person" to whom the FID corresponds and the title of the specific prerecorded video material that the person purchased. *Id*. at ¶ 78.

The FAC further alleges that "Personal Viewing Information" shared with Meta via the Meta Pixel constitutes PII and includes the title of video material that was purchased, the URL of the webpage where that video material is available for purchase, and the FID of the person who purchased it. *Id.* at ¶ 96; *see also, e.g., id.* ¶¶ 14, 69, 76, 79. To illustrate his allegation, Plaintiff provides the following "exemplar source code."

```
Request URL:      https://www.facebook.com/tr/?batch=1&events[0]=id%3D1860278107532286%26ev%3DSubscribedButtonClick%26dl%3Dhttps%253A%252F%252Fwww.oldies.com%252Fproduct-view%252F70946W.html%26rl%3Dhttps%253A%252F%252Fwww.oldies.com%252Fsearch%252Fresults.cfm%253Fq%253Dwitchtrap%2526results%253DProducts%26if%3Dfalse%26ts%3D1727803143337%26cd%5BbuttonFeatures%5D%3D%257B%2522classList%2522%253A%2522add-cart%2520ui%2520left%2520labeled%2520fluid%2520icon%2520large%2520yellow%2520pill%2520cart%2520button%2522%252C%2522destination%2522%253A%2522https%253A%252F%252Fwww.oldies.com%252Fshopping-cart%252Faddrec.cfm%252Fproduct_70946W.html%2522%252C%2522id%2522%253A%2522%2522%252C%2522imageUrl%2522%253A%2522%2522%252C%2522innerText%2522%253A%2522Add%2520to%2520Cart%2522%252C%2522numChildButtons%2522%253A0%252C%2522tag%2522%253A%2522a%2522%252C%2522type%2522%253Anull%252C%2522name%2522%253A%2522%2522%257D%26cd%5BbuttonText%5D%3DAdd%2520to%2520Cart%26cd%5BformFeatures%5D%3D%255B%255D%26cd%5BpageFeatures%5D%3D%257B%2522title%2522%253A%2522Witchtrap%2520DVD%2520(1989)%2520-%2520MVD%2520Rewind%2520Collection%2520%257C%2520OLDIES.com%2522%257D%26sw%3D3008%26sh%3D1692%26v%3D2.9.169%26r%3Dstable%26ec%3D2%26o%3D4126%26fbp%3Dfb.1.1726667945562.9325324824866483500%26ler%3Dempty%26cdl%3DAPI_unavailable%26it%3D1727803118645%26coo%3Dfalse%26es%3Dautomatic%26tm%3D3%26exp%3Df3&rqm=GET
Request Method:   GET
Status Code:      ● 200 OK
Remote Address:   157.240.14.35:443
Referrer Policy:  strict-origin-when-cross-origin
```

*Id*. at ¶ 80.  This, according to Plaintiff, is the PII that was allegedly transmitted to Meta upon which his claim is based.

Plaintiff also alleges that Old School disclosed information that reveals the videos purchased by a person from Oldies.com, as well as the person's name and address to various third parties.  *See id*. at ¶¶ 1, 2, 9, 15, 50, 52–53.  The only evidence Plaintiff provides for this assertion, however, is a screenshot labelled "Oldies.com Mailing List" purportedly procured from the website of NextMark, Inc., which is not a party to this case.  *See id*. at ¶¶ 51–52.

### III.  LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility requires that a plaintiff makes sufficient factual allegations to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556). "[L]abels and conclusions, and a formulaic recitation of the elements" of claims will not suffice.  *Twombly*, 550 U.S. at 555.  A court must take all of the well-pled factual allegations in the complaint as true but is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  A complaint must make "some showing sufficient to justify moving the case beyond the pleadings to the next stage of litigation" to survive a motion to dismiss. *Phillips v. County of Allegheny*, 515 F.3d 224, 234–35 (3d Cir. 2008) (dismissing claim for failure to plead element of cause of action).

### IV.  ARGUMENT

Plaintiffs in recent years have repurposed the VPPA—a decades-old statute—to bring putative class actions based on commonly used online technologies that have nothing to do with

3

what the law was originally intended to address. Congress enacted the VPPA in response to the publication of 146 movie titles that then-Judge Robert M. Bork had rented from a local video store around the time of his nomination to the U.S. Supreme Court in the 1980s.

Reflecting the concerns of Congress, the VPPA only prohibits a "videotape service provider" from "knowingly" disclosing the "personally identifiable information" (PII) of a consumer. 18 U.S.C. § 2710(b)(1). PII in this context is defined as information "which identifies a person as having requested or obtained specific video materials." 18 U.S.C. §§ 2710(a)(3). "Congress's purpose in passing the [VPPA] was quite narrow: to prevent disclosures of information that would, *with little or no extra effort*, permit an ordinary recipient to identify a particular person's video-watching habits." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 284 (3d Cir. 2016) (emphasis added).

The VPPA was born out of the very narrow factual context of a reporter obtaining Judge Bork's personal video viewing records and then publicizing them. That is an entirely different universe from what occurred here, decades later. It is undisputed that Old School did not take the name of Plaintiff's purchased video and publicize it in the manner that occurred with Judge Bork.

Plaintiff has failed to adequately allege that Old School violated the VPPA because: (1) Plaintiff does not plausibly allege that Old School knowingly disclosed his (or anyone else's) PII to Meta via the Meta Pixel; and (2) Plaintiff does not adequately allege that Old School knowingly disclosed PII via the alleged disclosure of the mailing list.[1]

---

[1] Old School does not concede either that it is a video tape service provider ("VTSP") or that Plaintiff is a consumer for purposes of the VPPA (and indeed, circuit splits on both issues counsel against such a determination). However, even if Old School were found to be a VTSP and Plaintiff was found to be a consumer, Plaintiff still fails to allege the remaining elements required for finding a violation of the VPPA.

4

### A. The FAC Does Not Allege that Old School Knowingly Disclosed PII to Meta as Defined in the VPPA

#### 1) The FAC Does Not Plausibly Allege that an Ordinary Person Could Readily Identify a Specific Person and Particular Video They Watched

The Third Circuit, along with the Second and Ninth Circuits, employs the "ordinary person" standard to interpret the meaning of PII.  *See In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 267; *see also Solomon v. Flipps Media, Inc.*, 2025 WL 1256641, at *8 (2d Cir. May 1, 2025) ("*Flipps Media*"); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017).  In *In re Nickelodeon*, the Third Circuit held that "the [VPPA's] prohibition on the disclosure of [PII] applies only to the kind of information that would *readily permit* an *ordinary person* to identify a *specific individual's* video-watching behavior." *Id*. (emphasis added).  The VPPA protects only PII that "ties that person to *particular videos* that the person watched." *Id*. at 285 (emphasis added; quoting *In re Hulu Privacy Litig.*, 2014 WL 1724344, at *8 (N.D. Cal. Apr. 28, 2014); *see also Eichenberger*, 2015 WL 7252985, at *4.  Plaintiff's FAC does not allege facts to satisfy this narrow definition.

The Second Circuit in *Flipps Media*—decided just weeks ago—is the first appellate court to analyze whether a defendant allegedly using the Meta Pixel disclosed PII under the "ordinary person" standard.  That Court, relying heavily on the Third Circuit's decision in *In re Nickelodeon*, *see, e.g., Flipps Media, Inc.*, 2025 WL 1256641 at *7, 9–11, found that the plaintiff had *not* plausibly alleged disclosure of PII, and affirmed the district court's dismissal of the plaintiff's complaint without leave to amend.  *See id.*, 2025 WL 1256641 at *29–30.

In *Flipps Media*, the plaintiff alleged that the defendant, Flipps Media, Inc. d/b/a FITE, violated the VPPA by sending to Facebook: (1) a sequence of characters, letters, and numbers that, if correctly interpreted, would identify the title and URL (uniform resource locator, or web address)

5

of the video she watched; and (2) her FID. The plaintiff also provided the "exemplar screenshot" below.



*See id*. at *3 (markup in original).

The Second Circuit first considered the computer code in the screenshot. It found that while the video title appeared in the screenshot, "[t]he words of the title … are interspersed with many characters, numbers, and letters" and "[i]t is implausible that an ordinary person would look at the phrase 'title%22%3A%22-%E2%96%B7%20The%20Roast%20of%- 20Ric%20Flair' … and understand it to be a video title." *Id*. at *10.

The Court also determined that it was implausible that an ordinary person would be able to pick out, "with little or no extra effort," which of the many sequences of words was the title. *Id*. The Court next assessed whether the complaint plausibly alleged that an ordinary person could identify the plaintiff through her FID and found that they could not because it would not be apparent that the "c_user" phrase on FITE's servers was a person's FID. *Id*. at *11. Finally, the Court noted that the complaint lacked any details about how an ordinary person might access the information in the screenshot; but even assuming, *arguendo*, that they could, the complaint was

"devoid of any details about *how* an ordinary person would use an FID to identify Solomon." *Id*. (emphasis in original).

Leaning again on *In re Nickelodeon*, the *Flipps Media* Court concluded that "we are not persuaded that an FID is 'vastly different' … from the unique device identifiers in *Nickelodeon*, or the Roku device serial numbers in *Eichenberger*." *Flipps Media, Inc.*, 2025 WL 1256641 at *11 (internal citations omitted). Accordingly, the Court held that the plaintiff failed to plausibly allege that FITE disclosed PII in violation of the VPPA and therefore affirmed the district court's dismissal of the complaint. *See id.*

The detailed analysis in *Flipps Media* provides a clear roadmap (and the only appellate analysis employing the Third Circuit's "ordinary purpose" standard) for this Court. Here, the exemplar source code shows lines of largely unintelligible computer code with no explanation of what it purports to represent. *See* FAC at ¶ 80. The URL contains an overwhelming jumble of symbols, numbers, and letters, and it is implausible that an ordinary person would be able to identify, particularly with "little or no extra effort," the title of the DVD plaintiff allegedly purchased.

In addition, the FAC never explains where to find the FID in the exemplar source code (if it is even shown) *or anywhere else*. If it is implausible that an ordinary person would be able to identify an FID with the information the *Flipps Media* plaintiff provided, that is all the truer here. Furthermore, the FAC lacks any allegations about how an ordinary person might access the exemplar source code—in fact, Plaintiff's reference to "exemplar" source code implies that even *he* could not access the actual code that he alleges was sent to Meta. The omission of the actual source code casts even more doubt on whether an ordinary person could connect Plaintiff to the video he allegedly purchased.

7

The Court should not credit the conclusory statement in the FAC that "any ordinary person could learn the identity of the person to whom the FID corresponds and the title of the specific prerecorded video material that the person purchased … by accessing the URL www.facebook.com/ and inserting the person's FID."  FAC at ¶ 78; *see Iqbal*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss).

Unsurprisingly, other courts have noted that using FIDs and similar data to identify a specific person is "far from obvious" and that even experts in the field need to conduct investigation to determine what an FID signifies.  *In re Hulu Privacy Litig.*, 86 F. Supp. 3d 1090, 1102 (N.D. Cal. 2015) ("*Hulu III*"); *see also, e.g., Flipps Media, Inc.*, 2025 WL 1256641 at *11 ("the Complaint is also devoid of any details about how an ordinary person would use an FID to identify [the plaintiff]"); *In re Nickelodeon*, 827 F.3d at 283 ("To an average person, an IP address or a digital code in a cookie file would likely be of little help in trying to identify an actual person.").

However, even if an ordinary person somehow managed to overcome all these hurdles, Plaintiff's claims still fall flat because Plaintiff never alleges that *his* Facebook profile includes any information about him that would allow an ordinary person to identify him from his Facebook account.  Thus, even if an FID could be considered PII when coupled with purchase history (and as the Second Circuit found, it cannot), Plaintiff's FID cannot constitute PII because there are no specific allegations in the FAC showing that a person possessing his FID could identify him from the Facebook account affiliated with that FID.  *See In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 267 (holding that "the [VPPA's] prohibition on the disclosure of personally identifiable

information applies only to the kind of information that would readily permit an ordinary person to identify a *specific individual's* video-watching behavior"; emphasis added).

### 2) The FAC Does Not Allege that Old School Made a Disclosure to Meta

Plaintiff also has not stated a plausible claim that Old School disclosed his PII to Meta. Rather, the FAC is clear that it is the Meta Pixel that sends information to Meta—not that Old School did anything. Plaintiff alleges that "installing the Meta Pixel on a website allows *Meta* to track actions that users with Meta accounts take on the site," FAC at ¶ 61, that "the *Meta Pixel* automatically detects first-party cookie data from the particular website that the visitor is on and then matches it with third-party cookie data from Meta," *id*. at ¶ 62, and that "*Meta* has used the Meta Pixel" to collect information. *Id*. at ¶ 73. The "exemplar source code" also strongly suggests that any URLs were not sent to Meta by the Oldies.com website, but were "GET" requests sent directly from Plaintiff's web browser, contradicting Plaintiff's conclusory statements that Old School disclosed PII to Meta via the Pixel. *See, e.g., id*. at ¶ 80. This is not enough to state a viable VPPA claim. Moreover, Plaintiff specifically does not allege that Old School discloses PII. The FAC emphatically states that Gotham and MVD "owned, operated, controlled, and directed" every aspect of Old School's business, including "the disclosures of oldies.com customers' Personal Viewing Information to third parties, including to Meta." *Id*. at ¶ 20–21. While Old School does not agree with these statements, to the extent that the Court credits these claims, it is unavoidable that Old School did not make any disclosures.

### 3) Any Disclosure to Meta was not "Knowing" by Old School

Plaintiff also fails to allege that Old School "*knowingly* disclose[d]" any PII to Meta. 18 U.S.C. 2710(b)(1) (emphasis added). Plaintiff alleges that "Defendants intentionally installed and programmed the Meta Pixel code on their website, knowing that such code would transmit to Meta

9

the titles of the video materials purchased by its customers coupled with their customers' unique identifiers (including FIDs)." FAC at ¶ 98.

To "knowingly" disclose PII, a defendant must understand that the information it is disclosing could be used by an ordinary person to identify the plaintiff's video-watching behavior. The VPPA "'views disclosure from the perspective of the disclosing party' and 'looks to what information a video service provider discloses, not to what the recipient of that information decides to do with it.'" *Flipps Media, Inc.*, 2025 WL 1256641 at *19 (citing *Eichenberger*, 876 F.3d at 985). This means that the VPPA asks not what the recipient (here, Meta) could do with the information, but whether the defendant (here, Old School) knew that the information could be used in that way. *See Eichenberger*, 876 F.3d at 985 (finding no knowing disclosure of PII under ordinary person test when defendant disclosed serial numbers and videos viewed but never possessed the information necessary to actually identify plaintiff); *see also Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 3727230, at *9 (S.D.N.Y. Aug. 11, 2017) ("the knowledge element of the VPPA violation is intertwined with the definition of PII. If [the defendant] did not think it was conveying PII, then there could be no knowledge of the conveyance, regardless of whether it knew what [Meta] might do with the information."). In other words, "[t]o state an actionable claim under the VPPA, a plaintiff must prove that the video-service provider actually knew that it was disclosing: 1) a user's identity; 2) the identity of the video material; and 3) the connection between the two." *Hulu III*, 86 F. Supp. 3d at 1097. That is not the case here.

Plaintiff does not allege that Old School sent his actual identity to Meta, nor does he allege that Old School knew that Meta might "read" the FID and title of purchased video materials together. *See id.* at 1095. In fact, Plaintiff notably does not so much as allege that Old School ever possessed his FID, a prerequisite for Old School to have knowingly disclosed that information

10

to Meta. *See Chutich v. Green Tree Acceptance, Inc.*, 1993 WL 173813, at *9 (D. Minn. Apr. 19, 1993) ("[I]t is axiomatic that a corporation cannot disclose what it does not know."); *see also Eichenberger*, 876 F.3d at 985. Thus, Plaintiff fails to allege that Old School made any knowing disclosure of PII to Meta.

Here again, even if there were a knowing disclosure, the FAC does not allege that it was by Old School. Plaintiff claims that Old School intentionally installed the Meta Pixel on Oldies.com, *see* FAC at ¶ 98, and that the Pixel has been on Oldies.com since at least August 3, 2023 when he made a purchase on the website. *See id.* at ¶¶ 12, 14. However, Plaintiff also alleges that "since March 29, 2023, [Old School] has exercised no independent control over its business activities." *Id.* at ¶ 20. While Old School disputes this, taking the allegations in the Complaint as true, it is self-evident that Old School could not have made any knowing disclosures.

### B. The FAC Does Not Allege that Old School Knowingly Disclosed PII by Allegedly Sharing the Mailing List

In addition to his claims about the Meta Pixel, Plaintiff also alleges that Old School disclosed PII to unspecified "third parties in the data-aggregation and brokerage marketplace." *Id.* at ¶ 9. Plaintiff alleges that Old School disclosed information that reveals the videos purchased by a person on Oldies.com, as well as their name and address. *See, e.g., id.* at ¶ 9. Most of these allegations are not supported by "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. In fact, the only factual support Plaintiff provides for his otherwise vague assertions is the screenshot labelled "Oldies.com Mailing List" purportedly procured from the website of NextMark, Inc. *See id.* at ¶¶ 51–52. And even then, the mailing list that is advertised is simply that—a mailing list. The advertisement states that it merely provides mailing information and does not state that it provides any information identifying the

11

"specific" information customers purchased, as is necessary to constitute PII. 18 U.S.C. § 2710(a)(3).

The FAC fails to plausibly allege that Old School knowingly disclosed PII through the NextMark mailing list because: (1) the FAC makes only bare assertions that the mailing list contains PII; and (2) even if it did include PII, based on the allegations in the FAC, Old School could not have knowingly disclosed that PII.

As discussed in depth above, to allege the disclosure of PII, a plaintiff must show that information was shared that would readily permit an ordinary person to tie a specific individual to particular videos that the person watched. *See supra* § IV.A.1; *see also In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 285. Plaintiff has not done so. He claims that the mailing list includes names, addresses, titles of video cassettes and DVDs purchased from Oldies.com, and the amount of money spent on those purchases. *See* FAC at ¶ 52. The fact that Plaintiff has not provided any factual support demonstrating that the alleged mailing list includes this information is telling. While he claims that Defendants made such information available to "anyone who wanted to acquire it," *id.* at ¶ 15, the fact that Plaintiff has not done so suggests that it is out of reach for the "ordinary person." It also leaves the Court without sufficient facts to credit the claims. Accordingly, Plaintiff has failed to allege any PII associated with the alleged mailing list.

Even if the mailing list did include PII, Plaintiff has still failed to allege that Old School knowingly disclosed it to anyone. On the contrary, the FAC alleges that Gotham and MVD operated, maintained, oversaw, directed, and controlled "all of the disclosures of oldies.com customers' Personal Viewing Information at issue in this case." *Id*. at ¶ 22. Old School does not agree with Plaintiff's statement of the relationship among the Defendants, but even taking the

allegations in the FAC as true, it is clear that Old School did not make a knowing disclosure via the mailing list.

## V. CONCLUSION

For all these reasons, the Court should dismiss Plaintiff's FAC, with prejudice.

Dated: May 19, 2025

BENESCH, FRIEDLANDER, COPLAN
 & ARONOFF LLP

*/s/ Noelle B. Torrice*
Noelle B. Torrice (No. 317928)
1313 North Market Street, Suite 1201
Wilmington, DE 19801
Telephone: (302) 442-7010
Email: ntorrice@beneschlaw.com

Stephanie Sheridan
(*pro hac vice forthcoming*)
Matthew P. Farrell
(*pro hac vice forthcoming*)
100 Pine Street, Suite 3100
San Francisco, CA 94111
Telephone: (628) 600-2251
Email:  ssheridan@beneschlaw.com
            mpfarrell@beneschlaw.com

*Counsel for Defendant Old School Ventures, Inc.*

13

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 19, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

                                    */s/ Noelle B. Torrice*
                                    Noelle B. Torrice (PA Bar No. 317928)