**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOSEPH MULL, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br> v.<br><br>GOTHAM DISTRIBUTING CORPORATION, MVD ENTERTAINMENT GROUP, and OLD SCHOOL VENTURES, INC., individually and collectively d/b/a OLDIES.COM,<br><br>      Defendants. | Case No. 2:24-cv-06083-GJP<br><br>The Hon. Gerald J. Pappert |

<u>**PLAINTIFF'S OMNIBUS RESPONSE AND INCORPORATED MEMORANDUM OF
LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**</u>

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

LEGAL STANDARD.......................................................................................................... 4

ARGUMENT ...................................................................................................................... 4

I.    The FAC Adequately Alleges Personally Identifiable Information Concerning the Meta

Class ................................................................................................................................... 5

    A.    Defendants' Disclosure Consisted of the Identity of the User and Video Material, and a

    Connection Between the Two. ........................................................................................ 5

    B.    Defendants' Disclosures Were Knowing ...................................................... 10

II.    The FAC Adequately Alleges Personally Identifiable Information Concerning the Meta

Class ................................................................................................................................. 13

III.   The FAC Adequately Alleges Each Defendant's Liability.................................. 15

CONCLUSION ................................................................................................................. 22

# TABLE OF AUTHORITIES

**Cases**

*A.B. v. Marriott Int'l, Inc.*,
    455 F. Supp. 3d 171 (E.D. Pa. 2020). ........................................................................ 19

*Ahtasham v. Lyft Inc.*,
    No. CV 24-1673, 2024 WL 4173782 (E.D. Pa. Sept. 12, 2024). ................................. 18

*Am. Bell Inc. v. Fed'n of Tel. Workers of Pennsylvania*,
    736 F.2d 879 (3d Cir. 1984) ....................................................................................... 16

*Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421 (3d Cir. 1994) ............. 19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................................... 4

*Azurous, Inc. v. Kennedy Int'l, Inc.*,
    No. CV 23-04770 (ZNQ) (JBD), 2024 WL 3219663 (D.N.J. June 28, 2024) ............................. 18

*Batts v. Gannett Co.*,
    2023 WL 3143695 (E.D. Mich. Mar. 30, 2023). ........................................................... 15

*Beavers v. West Penn Power Co.,*
    436 F.2d 869 (3d Cir. 1971) ........................................................................................ 20

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
    No. 17-CV-04570 (LAK) (KHP), 2017 WL 3727230 (S.D.N.Y. Aug. 11, 2017). ..................... 12

*Boelter v. Hearst Commc'ns, Inc.*, 1
    92 F. Supp. 3d 427 (S.D.N.Y. 2016) ........................................................................... 15

*Bostock v. Clayton Cnty., Georgia*,
    590 U.S. 644 (2020) ...................................................................................................... 9

*Buck v. Hampton Twp. Sch. Dist.*,
    452 F.3d 256 (3d Cir. 2006) ........................................................................................ 18

*Chutich v. Green Tree Acceptance, Inc.*,
    No. 3-88-CIV 869, 1993 WL 173813 (D. Minn. Apr. 19, 1993). ................................. 12

*Collins v. Pearson Educ., Inc.*,
    721 F. Supp. 3d 274 (S.D.N.Y. 2024) ............................................................................ 7

*Combustion Sys. Servs., Inc. v. Schuylkill Energy Res., Inc.*,
    No. CIV.A. 92-4228, 1993 WL 514496 (E.D. Pa. Dec. 1, 1993). ................................. 20

*Czarnionka v. Epoch Times Ass'n, Inc.*,
  No. 22 CIV. 6348 (AKH) (S.D.N.Y. Nov. 17, 2022). ................................................................. 11

*Doe (K.R.D.) v. Wyndham Hotels & Resorts, Inc.*,
  No. CV 24-8174 (SDW) (JBC), 2025 WL 1166519 (D.N.J. Apr. 21, 2025). ............................ 19

*Doe v. Princeton Univ.*,
  30 F.4th 335 (3d Cir. 2022) ........................................................................................................ 4

*Eichenberger v. ESPN, Inc.*,
  876 F.3d 979 (9th Cir. 2017). ..................................................................................................... 8

*Fed. Trade Comm'n v. AbbVie Inc.*,
  976 F.3d 327 (3d Cir. 2020)........................................................................................................ 4

*Flora v. County of Luzerne*,
  776 F.3d 169 (3d Cir. 2015)........................................................................................................ 4

*Fuhrman v. Mawyer*,
  No. 1:21-CV-02024, 2023 WL 5672314 (M.D. Pa. Sept. 1, 2023)............................................ 18

*Gaines v. Nat'l Wildlife Fed'n*,
  No. 22-11173, 2023 WL 3186284 (E.D. Mich. May 1, 2023). ................................................... 15

*Ghanaat v. Numerade Labs, Inc.*,
  689 F. Supp. 3d 714 (N.D. Cal. 2023). ...................................................................................... 11

*Golden v. NBCUniversal Media, LLC*,
  688 F. Supp. 3d 150 (S.D.N.Y. 2023)......................................................................................... 7

*Harris v. Pub. Broad. Serv.*,
  662 F. Supp. 3d 1327 (N.D. Ga. 2023). ..................................................................................... 12

*Horton v. GameStop Corp.*,
  380 F. Supp. 3d 679 (W.D. Mich. 2018). ................................................................................... 14

*In re Hulu Priv. Litig*,
  86 F. Supp. 3d 1090 (N.D. Cal. 2015). ......................................................................... 6, 8, 12, 13

*In Re LTC Holdings, Inc.*,
  10 F.4th 177 (3d Cir. 2021). ....................................................................................................... 9

*In re Nickelodeon Consumer Priv. Litig.*,
  827 F.3d 262 (3d Cir. 2016)........................................................................................... 2, 5, 8, 10

*Int'l Bhd. of Teamsters v. United States*,
  431 U.S. 324 (1977)..................................................................................................................... 9

*Jackson v. Fandom, Inc.*,
    No. 22-CV-04423-JST, 2023 WL 4670285 (N.D. Cal. July 20, 2023). ........................................ 7

*John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*,
    119 F.3d 1070, 1076 (3d Cir. 1997) ............................................................................................. 3

*Kaplan v. First Options of Chicago, Inc.*,
    19 F.3d 1503 (3d Cir. 1994) ....................................................................................................... 16

*Lebakken v. WebMD, LLC*,
    640 F. Supp. 3d 1335 (N.D. Ga. 2022). ..................................................................................... 11

*Leccese v. Allstate Prop. & Cas. Ins. Co.*,
    630 F. Supp. 3d 628 (E.D. Pa. 2022). .......................................................................................... 3

*Li v. Georges Media Grp. LLC*,
    No. CV 23-1117 (E.D. La. Nov. 3, 2023) ................................................................................. 11

*Loan Servs. Inc. v. NEWITY LLC*,
    2023 WL 6316749 (D. Del. Sept. 28, 2023) ............................................................................... 4

*Manza v. Pesi*, Inc.,
    No. 24-CV-690-JDP, 2025 WL 1445762 (W.D. Wis. May 20, 2025). ............................... 10, 14

*Martinez v. D2C, LLC*,
    No. 23-21394-CIV, 2023 WL 6587308 (S.D. Fla. Oct. 10, 2023). ............................................ 7

*McGovern v. Jack D's, Inc.*,
    No. CIV.A. 03-5547, 2004 WL 228667 (E.D. Pa. Feb. 3, 2004). ............................................ 18

*McRoberts v. Phelps*,
    138 A.2d 439 (Pa. 1958). ........................................................................................................... 21

*Mendoza v. Caesars Ent., Inc.*,
    No. 23-CV-03591, 2024 WL 2316544 (D.N.J. May 22, 2024) .................................................. 2

*Mollett v. Netflix, Inc.*,
    795 F.3d 1062 (9th Cir. 2015) .................................................................................................... 5

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
    No. CV 22-4674, 2024 WL 4350328 (E.D. Pa. Sept. 30, 2024) ................................................ 4

*Nock v. Boardroom, Inc.*,
    No. 22-CV-11296, 2023 WL 3572857 (E.D. Mich. May 19, 2023). ........................................ 15

*Odyssey Contracting, Corp. v. Hercules Painting Co., Inc.*,
    No. 2:17CV1255, 2022 WL 5237196 (W.D. Pa. Sept. 2, 2022). .............................................. 20

*Pearson v. Component Tech. Corp.*,
247 F.3d 471 (3d Cir. 2001) ................................................................................. 16

*Pension Ben. Guar. Corp. v. LTV Corp.*,
496 U.S. 633 (1990) .............................................................................................. 9

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
998 F.2d 1192 (3d Cir. 1993) ................................................................................ 4

*Piper v. Talbots, Inc.*,
507 F. Supp. 3d 339 (D. Mass. 2020). ................................................................. 15

*Powervar, Inc. v. Power Quality Scis., Inc.*,
No. CV 20-5908, 2021 WL 2986417 (E.D. Pa. July 15, 2021). ........................... 19

*Romero v. Allstate Ins. Co.*,
1 F. Supp. 3d 319 (E.D. Pa. 2014). ....................................................................... 4

*Russett v. NTVB Media, Inc.*,
No. 22-10352, 2023 WL 6315998 (E.D. Mich. Sept. 28, 2023)............................ 15

*Salaam v. Trump*, --- F. Supp.3d ----,
No. CV 24-5560, 2025 WL 1075034 (E.D. Pa. Apr. 10, 2025). ........................... 3

*Sellers v. Bleacher Rep., Inc.*,
No. 23-CV-00368-SI (N.D. Cal. July 28, 2023). ................................................. 12

*Solomon v. Flipps Media, Inc.*,
136 F.4th 41 (2d Cir. 2025). ....................................................................... 7, 8, 9, 10

*Southco, Inc. v. Kanebridge Corp.*,
258 F.3d 148 (3d Cir. 2001) ................................................................................. 9

*Streamline Bus. Servs., LLC v. Vidible, Inc.*,
No. CIV.A. 14-1433, 2015 WL 3477675 (E.D. Pa. June 2, 2015). ..................... 3, 20

*Sugartown Worldwide LLC v. Shanks*,
129 F. Supp. 3d 201 (E.D. Pa. 2015). ................................................................. 19

*Trinity Indus., Inc. v. Greenlease Holding Co.*,
903 F.3d 333 (3d Cir. 2018) ................................................................................. 16

*United States v. Price*,
361 U.S. 304 (1960). ............................................................................................. 9

*United States v. United Mine Workers of Am.*,
330 U.S. 258 (1947) ............................................................................................. 9

*Waldman v. Shoemaker,*
   367 Pa. 587, 80 A.2d 776 (Pa. 1951). ........................................................................ 20

**Statutes**
18 U.S.C. § 2710 ..................................................................................................... passim

**Rules**
Fed. R. Civ. P. 8(a)(2) ................................................................................................. 4

Plaintiff Joseph Mull, individually and on behalf of all others similarly situated, respectfully submits this omnibus response to the motions to dismiss filed by Defendants ("Motions" or "Mot"). *See* ECF Nos. 21, 22, 27.

## INTRODUCTION

Plaintiff brings a single claim against Gotham Distributing Corporation ("Defendant Gotham"), MVD Entertainment Group ("Defendant MVD"), and Old School Ventures, Inc. ("Defendant OSVI") (collectively, "Defendants"), for violating the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. *See* ECF No. 19. His claim is brought, individually and on behalf of all others similarly situated, and arises from Defendants' knowing and intentional selling, renting, transmitting, and/or otherwise disclosing customers' personally identifiable information ("PII") to various third parties, such as data appenders, data aggregators, data brokers, data cooperatives, aggressive marketing companies, and Meta Platforms, Inc. f/k/a Facebook, Inc. ("Meta"). *See id.* at ¶¶ 1, 3-4. Defendants violated the VPPA in two ways. *See id.* at ¶ 2. First, Defendants collected personally identifiable information, including the titles of specific videos and other audio-visual products purchased, from customers, which Defendant then rented, sold, or otherwise disclosed to data appenders, data aggregators, data brokers, data cooperatives, aggressive marketing companies, and various third-party renters and exchangers. *See id.* at ¶¶ 3, 50, 53. Second, Defendants knowingly installed the Meta Pixel tracking technology and knowingly permitted the disclosure of their customers' PII to Meta via the Meta Pixel. *See id.* at ¶¶ 4, 56, 69.

Defendants have now moved to dismiss the First Amended Complaint ("FAC"). Each Defendant argues that the FAC should be dismissed because "Plaintiff does not plausibly allege that [Defendant] knowingly disclosed his (or anyone else's) PII to Meta via the Meta Pixel" under

this Circuit's ordinary person precedent.  ECF No. 21-1[1] at 4.[2]  Second, Defendants argue that "Plaintiff does not adequately allege that [the Defendant] knowingly disclosed PII via the alleged disclosure of the mailing list."  *See id.*  Third, Defendant MVD argues that its Motion should be granted because "Plaintiff does not plausibly allege that Old School is a joint venture between MVD and Gotham" through contributions or shared profits, "or that MVD in any way controls Old School or is responsible for oldies.com."  *See* ECF No. 27-1 at 3-5.

Defendants' arguments for dismissal are completely without merit.  Defendants' first argument fails because this Circuit's ordinary person standard contemplated the very issue that is now before this Court by providing that "even a numeric identifier might qualify as personally identifiable information" and then citing a case as an example  where that identifier would likely constitute personally identifiable information because the defendant-company "would check to see if the user *already* had cookies on his or her machine indicating that the user was a Facebook member. . . [and] [i]f so, [the company] would transmit that coded information to Facebook when it requested a "Like" button in such a way that Facebook could easily identify an account holder's video preferences."  *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 289 n. 174 (3d Cir. 2016).  Defendants have used their www.oldies.com website to do exactly what the Third Circuit contemplated.  *See e.g.*, *Mendoza v. Caesars Ent., Inc.*, No. 23-CV-03591, 2024 WL 2316544, at *5 (D.N.J. May 22, 2024) ("Each time [p]laintiff plays a video game on the Website, [d]efendant—

---

[1] Defendants Gotham and MVD have incorporated Defendant OSVI's argument by reference.  *See* ECF No. 22-1 at 2 ("As such, Gotham incorporates herein by reference the arguments made by Old School in its Motion to Dismiss and Memorandum of Law and based upon those arguments, asks this Court to dismiss the FAC as against Gotham[.]"); ECF No. 27 ("MVD incorporates herein its Memorandum of Law in Support of this motion, and for the sake of judicial efficiency, further incorporates the Motion to Dismiss and supporting Memorandum of Law filed by Co-Defendant Old School Ventures, Inc.").

[2] All pagination referenced in this document shall refer to the pagination appearing at the bottom of each page rather than the CM/ECF header.

through Facebook Pixel—discloses [p]laintiff's Facebook ID and the game he was playing to Facebook.").

Defendants' second argument fares no better. The FAC specifically alleges that the customer lists that Defendants sold contained Plaintiff's identity and the identities of other class members, the titles of the specific videos purchased, and there is no clearer connection between the two because the disclosure of that information was transaction-oriented and included both pieces of information in the disclosure. *See* ECF No. 19, ¶¶ 51-53.

Defendant MVD's argument falls flat because the FAC alleges (1) the existence of an agreement between the Defendants, (2) all Defendants contributed to the joint venture through "sale[s] of prerecorded video materials to consumers on the oldies.com," (3) joint control over the www.oldies.com website, and (4) the joint venture relates to a single business transaction— the creation of "a new music and film direct-to-consumer business[.]" *See id.* at ¶¶ 20-22, 69, 76-77. These allegations are sufficient to establish a joint venture at the pleading stage, just as the court held in *Streamline Bus. Servs., LLC v. Vidible, Inc.*, No. CIV.A. 14-1433, 2015 WL 3477675, at *6 (E.D. Pa. June 2, 2015).

As a final matter, Defendants make only fleeting reference to the remaining elements of Plaintiff's VPPA claim in footnote 1 of Defendant OSVI's Motion. Defendants' failure to develop their arguments means they should not be considered and should be deemed an abandonment of their challenge as to those elements. *See John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 (3d Cir. 1997) ("However, arguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived."); *Salaam v. Trump*, --- F. Supp.3d ----, No. CV 24-5560, 2025 WL 1075034, at *5 (E.D. Pa. Apr. 10, 2025) (holding same); *Leccese v. Allstate Prop. & Cas. Ins. Co.*, 630 F. Supp. 3d 628, 635 (E.D. Pa. 2022) (same); *Murphy v. Thomas Jefferson Univ.*

*Hosps., Inc.*, No. CV 22-4674, 2024 WL 4350328, at *6 (E.D. Pa. Sept. 30, 2024); *Romero v. Allstate Ins. Co.*, 1 F. Supp. 3d 319, 409 (E.D. Pa. 2014) (refusing to consider argument).

The Motions should therefore be denied.

## LEGAL STANDARD

To survive dismissal, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief ...." Fed. R. Civ. P. 8(a)(2). "Such a claim must plausibly suggest facts sufficient to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Loan Servs. Inc. v. NEWITY LLC*, 2023 WL 6316749, at *2 (D. Del. Sept. 28, 2023) (quoting *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When evaluating a motion to dismiss, the court "must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fed. Trade Comm'n v. AbbVie Inc.*, 976 F.3d 327, 351 (3d Cir. 2020) (internal quotation marks omitted). "The district court may not make findings of fact and, insofar as there is a factual dispute, the court may not resolve it." *Flora v. County of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015). Indeed, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

## ARGUMENT

A "plausible claim" under the VPPA requires a plaintiff to allege that (1) the defendant is a "video tape service provider," (2) the defendant disclosed "personally identifiable information concerning any customer" to "any person," (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by the statutory exceptions. *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 279 (3d Cir. 2016). Plaintiff has clearly and sufficiently alleged all four elements here.  Because Defendants only substantively challenge the second and third elements, Plaintiff will address those arguments below.

**I.    The FAC Adequately Alleges Personally Identifiable Information Concerning the Meta Class**

        **A.    Defendants' Disclosure Consisted of the Identity of the User and Video Material, and a Connection Between the Two.**

Plaintiff has adequately alleged that Defendants knowingly disclosed personally identifiable information to Meta by operation of the Meta Pixel.  Defendants' arguments to the contrary fail because they are based on an overstatement and misreading of a Second Circuit decision that merits little, if any, consideration.  Here is why.

The VPPA defines "personally identifiable information" as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."  18 U.S.C. § 2710(a)(1).  The Third Circuit has interpreted "personally identifiable information" to mean "information that would, with little or no extra effort, permit an ***ordinary recipient*** to identify a particular person's video-watching habits."  *In re Nickelodeon*, 827 F.3d at 284 (emphasis added).  This Circuit made clear, however, that its holding was not "a single-sentence holding capable of mechanistically deciding future cases," but instead should be viewed as a "more general framework" for applying the term in future cases.  *See id.* at 290.  Stated

differently, some district courts have construed this Circuit's test to require that a plaintiff plead that the disclosure permits an ordinary person to determine: "1) a user's identity; 2) the identity of the video material; and 3) the connection between the two[.]"  *In re Hulu Priv. Litig.* [*Hulu III*], 86 F. Supp. 3d 1090, 1097 (N.D. Cal. 2015).

Here, the FAC satisfies that standard.  Concerning identity, the FAC specifically alleges that "Defendants use . . . the Meta Pixel to disclose to Meta the unencrypted FID of the person who made the purchase" on the www.oldies.com website. *See* ECF No. 19, ¶ 76.  The FAC defines an FID as "a small piece of code known as a 'cookie'"— a unique sequence of numbers—that Meta launches and stores in the internet browsers of each Meta accountholder's device(s) to distinguish between website visitors" because that cookie is linked to a specific Meta profile.  *See id.* at ¶¶ 4, 60.  The FAC further alleges that "Meta has assigned to each of their users an 'FID' number – a unique and persistent identifier that allows anyone to look up the user's unique Meta profile and thus identify the user by name."  *See id.* at ¶ 59.  "[A]ny ordinary person could learn the identity of the person to whom the FID corresponds . . . by accessing the URL www.facebook.com/ and inserting the person's FID."  *See id.* at ¶ 78.  Accessing that web URL would direct any person to the Meta profile in question that the FAC alleges reveals the corresponding Facebook user's "first and last name, birth date, gender, and phone number or email address."  *See id.* at ¶¶ 4, 57.

Concerning the identity of the video material, the FAC specifically alleges that "Defendants intentionally programmed their oldies.com website (by following step-by-step instructions from Meta's website) to . . . systematically transmit[] to Meta the . . . the specific title of the prerecorded video material that the person purchased."  *See id.* at ¶¶ 4, 77.  The FAC specifically ties the identity and video material allegations directly to Plaintiff's experience by

alleging that in August 2023 "when Plaintiff purchased prerecorded video material from Defendants on their oldies.com website, Defendants disclosed to Meta Plaintiff's FID coupled with the specific title of the prerecorded video or video materials he purchased (as well as the URL where such video is available for purchase)[.]" *See id.* at ¶¶ 14, 79.  Concerning the connection between a user and the video material, the FAC specifically alleges that Defendant's configuration of the Meta Pixel is designed to carry out contemporaneous disclosures of the video title and FID, so "each transmission of information made from a company's website to Meta via the Meta Pixel is accompanied by, inter alia, the FID of the website's visitor."  *See id.* at ¶¶ 59, 68-69.

These allegations, taken together, are well-pled and satisfy this Circuit's ordinary person standard.  Indeed, these allegations are the same type of allegations that have been found to be sufficient by courts across this country that have applied the same standard.  *See Collins v. Pearson Educ., Inc.*, 721 F. Supp. 3d 274, 287 (S.D.N.Y. 2024) (finding each of the three elements necessary to establish personally identifiable information were adequately alleged); *Jackson v. Fandom, Inc.*, No. 22-CV-04423-JST, 2023 WL 4670285, at *4 (N.D. Cal. July 20, 2023) (applying the ordinary person test and finding that "the Court may reasonably infer that an ordinary person could readily identify a specific Facebook user on the basis of a Facebook Profile ID."); *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 159 (S.D.N.Y. 2023) (allegations sufficient); *Martinez v. D2C, LLC*, No. 23-21394-CIV, 2023 WL 6587308, at *4 (S.D. Fla. Oct. 10, 2023) ("Assuming the "ordinary person" standard applies, as Univision submits, the Court finds the proposed amended complaint's allegations sufficient").

Defendants resist the conclusion that the FAC satisfies the ordinary person test by citing a recent Second Circuit decision, *Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 45 (2d Cir. 2025). *Solomon* is unavailing for several reasons.  First, *Solomon* conflicts with Third Circuit precedent

by completely foreclosing the possibility that numeric identifiers can constitute PII, *see* 136 F.4th at 45 (finding that an FID is no different from the unique device identifiers held to be insufficient "in *Nickelodeon*, 827 F.3d at 262, and the Roku device serial numbers in [*Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017)]"), while this Circuit explicitly stated that "a numeric identifier might qualify as personally identifiable information, at least in certain circumstances." *In re Nickelodeon*, 827 F.3d at 289 n.174 (numeric identifier was personally identifying when it allowed Facebook to "easily identify an account holder's video preferences."). *Solomon*'s conclusion is therefore in direct conflict with *In re Nickelodeon*.

Put simply, the Third Circuit has explained that circumstances will exist where a numeric identifier can constitute personally identifiable information. For the avoidance of doubt, however, the *In re Nickelodeon* decision effectively draws a line in the sand between the Third and Second Circuits for a number of reasons. First, the Third Circuit's explicit citation to *In re Hulu* and, second, its explicit refusal to adopt a "single-sentence holding[.]" *In re Nickelodeon* intentionally and carefully explored the holding reached by the Northern District of California's *In re Hulu* decision, in the same footnote, declaring that numeric identifiers might constitute personally identifiable information under the VPPA. 827 F.3d at 289 n. 174. Faced with the same option as *Solomon*, the Third Circuit refused to craft a rigid, mechanical rule that would create an express conflict with the First Circuit because it agreed that "[s]ome disclosures predicated on new technology, such as the dissemination of precise GPS coordinates or customer ID numbers, may suffice." *Id.* at 290. Because *Solomon* leaves no room for numerical identifiers to constitute personally identifiable information, it cannot be reconciled with Third Circuit precedent and must be disregarded.

Second, *Solomon* is not binding on this Court as a Second Circuit decision, and this Court should follow its well-established precedent. *See Southco, Inc. v. Kanebridge Corp.*, 258 F.3d 148, 153 (3d Cir. 2001) (recognizing that "decisions from other circuits . . . are of course not binding on this Court[.]"); *In Re LTC Holdings, Inc.*, 10 F.4th 177, 190 (3d Cir. 2021) (same). Third, *Solomon* was wrongly decided because it relied heavily on flawed statutory construction by according "undue weight to post-enactment legislative history," which the Supreme Court has cautioned against for nearly a century. *See United States v. Price*, 361 U.S. 304, 313 (1960) ("Moreover, the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one."); *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 354 (1977) ("The views of members of a later Congress, concerning different sections of Title VII, enacted after this litigation was commenced, are entitled to little if any weight. It is the intent of the Congress that enacted s 703(h) in 1964, unmistakable in this case, that controls."); *Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990)("It is a particularly dangerous ground on which to rest an interpretation of a prior statute[.]"); *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 670 (2020) ("All we can know for certain is that speculation about why a later Congress declined to adopt new legislation offers a 'particularly dangerous' basis on which to rest an interpretation of an existing law a different and earlier Congress did adopt."); *see e.g., United States v. United Mine Workers of Am.*, 330 U.S. 258, 282 (1947) ("We fail to see how the remarks of these Senators in 1943 can serve to change the legislative intent of Congress expressed in 1932[.]").

Fourth, *Solomon* was wrongly decided because its restrictive interpretation would effectively immunize most modern data collection practices from VPPA liability, contrary to Congress's intent to protect video privacy in the digital age. *See Manza v. Pesi*, Inc., No. 24-CV-

690-JDP, 2025 WL 1445762 (W.D. Wis. May 20, 2025) ("That purpose is not served by allowing video tape service providers and third parties to knowingly evade the statute by disclosing a customer's identity with a number unknown to the 'ordinary person' but known by the recipient. It is rarely the 'ordinary person' who is seeking to invade a consumer's privacy."). This Court should reject *Solomon*'s overly-restrictive approach (the most restrictive approach to date) and instead apply this Circuit's flexible "general framework" that instructs district courts to consider the specific facts alleged in each case. *See In re Nickelodeon*, 827 F.3d at 289.

Fifth, even if this Court considered *Solomon*, the FAC is sufficient because the FAC alleges concrete, specific facts that are distinguishable. Unlike the vague allegations in *Solomon*, the FAC specifically alleges that any ordinary person can readily identify Plaintiff by simply accessing www.facebook.com/ and inserting the person's FID. *See* ECF No. 19, ¶ 78. This direct, one-step process requires no specialized knowledge, no deciphering of complex code, and no technological sophistication. All that is required is just typing a URL into a web browser, which is well within the capabilities of any ordinary person. The FAC further alleges that accessing this URL directly reveals the Facebook user's "first and last name, birth date, gender, and phone number or email address" (*id.* at ¶¶ 4, 57), providing complete PII.

The Motions asserting this basis for dismissal should therefore be denied.

B.    **Defendants' Disclosures Were Knowing**

Plaintiff alleges that Defendants' installation and programming of the Meta Pixel was intentional and deliberate**,** which is sufficient to plead knowledge under controlling Third Circuit precedent. *See* ECF No. 19, ¶¶ 56, 77, 82, 98. Defendants have offered no case law to the contrary—because they cannot.

Liability under the VPPA attaches when a "videotape service provider" like Defendant, "knowingly discloses . . . personally identifiable information concerning any consumer of such provider[.]"  *See* 18 U.S.C. § 2710 (b)(1).

Plaintiff has sufficiently alleged a knowing disclosure of personally identifiable information.  The FAC specifically alleges that:

> Defendants knowingly disclosed Plaintiff's and Meta Pixel Class members' Personal Viewing Information to Meta via the Meta Pixel technology because Defendants intentionally installed and programmed the Meta code on their website, **knowing that such code would transmit to Meta the titles of the video materials purchased by its customers coupled with their customers' unique identifiers (including FIDs).**

*See* ECF No. 19, ¶ 98 (emphasis added).  The FAC further alleges Defendants' knowledge because they (1) intentionally installed the Meta Pixel, (*id.* at ¶¶ 56, 98); (2) "intentionally programmed" the Meta Pixel "**so that all of its customers' Private Video Information is disclosed to Meta**." (*See id.*, ¶¶ 77, 82 (emphasis added)); and (3) knowingly "configured the Meta Pixel on its Website to send Event Data to Meta" when other configurations existed.  *See id.* ¶ 62 and ¶ 82.

Any one of these well-pled allegations, standing alone, would be sufficient to allege Defendant's knowing disclosure of personally identifiable information.  *See Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 721 (N.D. Cal. 2023) (knowledge sufficiently alleged when plaintiff alleged that "defendant knowingly installed the Meta Pixel knowing that it transmits the alleged P[I]I.").  Decisions from courts across the nation are in accord.  *See id.* (collecting cases); *Li v. Georges Media Grp. LLC*, No. CV 23-1117, 2023 WL 7280519, at *4 (E.D. La. Nov. 3, 2023); *Lebakken v. WebMD, LLC*, 640 F. Supp. 3d 1335, 1340 n.2 (N.D. Ga. 2022) (same); *Czarnionka v. Epoch Times Ass'n, Inc.*, No. 22 CIV. 6348 (AKH), 2022 WL 17069810, at *4 (S.D.N.Y. Nov. 17, 2022) ("Knowledge of what Facebook might do with the disclosed information

to yield PII is therefore unnecessary" to adequately allege knowing disclosure); *Sellers v. Bleacher Rep., Inc.*, No. 23-CV-00368-SI, 2023 WL 4850180, at *4 (N.D. Cal. July 28, 2023); *Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1337 (N.D. Ga. 2023) (precise knowledge is not required under the statute).

To the extent that Defendants MVD, OSVI, or Gotham purport to argue that the respective Defendant lacked knowledge, those arguments are unavailing because the corporate structure allegations in the FAC demonstrate collective knowledge and control between and among all Defendants.  The FAC alleges that since March 29, 2023, Defendants Gotham and MVD have "jointly owned, operated, controlled, and directed every aspect of Defendant OSV's business," including "the disclosures of oldies.com customers' Personal Viewing Information to third parties, including to Meta."  *See* ECF No. 19, ¶ 20.  This joint enterprise and shared control, as argued further in Section III *infra*, establishes that the disclosure was knowing by the controlling entities, regardless of which specific corporate entity technically made the disclosure.  Under principles of joint and several liability, all Defendants are responsible for the knowing disclosures made through their collective business operations.

Defendants rely on a host of cases that are neither factually nor procedurally applicable. To start, Defendants cite *Chutich v. Green Tree Acceptance, Inc.*, No. 3-88-CIV 869, 1993 WL 173813, at *1 (D. Minn. Apr. 19, 1993) and *In re Hulu*, ECF No. 21-1 at 10-11, which were decided at the summary judgment stage and are therefore procedurally inapplicable.  Defendant's reliance on *Chutich* is also misplaced because that case involved securities, not a violation of the VPPA. Nor does *Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17-CV-04570 (LAK) (KHP), 2017 WL 3727230, at *9 (S.D.N.Y. Aug. 11, 2017) apply here, because that decision was entered after a hearing on a motion for preliminary injunction, meaning the record in that case was evidentiarily

developed.  Here, not so.  Therefore, this Court should disregard Defendants' cases and look to the cases that Plaintiff has cited because those are on par with the question before this Court.

The Motions on this basis should be denied.

**II.    The FAC Adequately Alleges Personally Identifiable Information Concerning the Meta Class**

Plaintiff has adequately alleged that Defendants knowingly disclosed PII to third parties via customer lists.  Defendants' arguments to the contrary are bare-boned and feature no citations to relevant cases.  As explained above, Plaintiff must adequately allege that Defendants' disclosures, viz the Nextmark data card, include: "1) a user's identity; 2) the identity of the video material; and 3) the connection between the two[.]"  *See In re Hulu*, 86 F. Supp. 3d at 1097.  The FAC alleges each required component.

The FAC specifically alleges that Defendants' "vast digital database comprised of their customers' [personally identifiable] Information" and individual customers' personally identifiable information was later rented, sold, or otherwise disclosed … to data appenders, data aggregators, data brokers, data cooperatives, aggressive marketing companies, and various third-party renters and exchangers of this data."  ECF No. 19, ¶ 50.  Concerning user identity, the FAC alleges that Defendants disclosed specific names and addresses of their customers to third parties. *Id.* at ¶¶ 3, 50, 53, 55.  Plaintiff ties these allegations to his experience by specifically alleging that his information was included in Defendants' practices.  *See id.* at ¶ 15.  These allegations are further bolstered by the FAC's inclusion of a screenshot of the exact mailing list from oldies.com that Defendants offered for rental or sale on the Nextmark.com website, which listed 212,000 specific customer's information.  *See id.* at ¶¶ 51-52.  Contrary to Defendants' suggestions otherwise, these allegations are far from conclusory.

Concerning the identity of the video material, the FAC specifically alleges that Defendants disclosed "the particular prerecorded audio-visual product(s) [customers] purchased from Defendants' website (i.e., the titles of the video cassettes and DVDs purchased) and the amount of money they spent on those purchases." *Id.* at ¶ 52. Again, this information is confirmed by the exemplar included in the FAC detailing that a buyer of customer information can identify "Selects" to home in on specific customers within Defendants' dataset. *See id.* at ¶ 51. To even permit this homing in with respect to customer information, Defendants would have to first disclose this personally identifiable information to Nextmark for classification and filtering. Defendants have offered no allegations to the contrary. Concerning the connection between user identity and the video material requested, the FAC alleges contemporaneous disclosure of information. *See id.* at ¶¶ 3, 15, 50-55.

These well-pleaded allegations are sufficient to satisfy the ordinary person test as explained in the cases in Section I.A. above. Indeed, the Nextmark.com "data card" theory has survived motions to dismiss in VPPA cases before other courts. *See Manza*, No. 24-CV-690-JDP, 2025 WL 1445762 (W.D. Wis. May 20, 2025) (finding allegations that Nextmark received dataset from defendant sufficient to survive motion to dismiss). Additionally, courts have permitted the same data card theory in analogous data-privacy cases under other state statutes, which involved the same types of disclosures of consumer information at issue in this case. *See, e.g., Horton v. GameStop Corp.*, 380 F. Supp. 3d 679, 682 (W.D. Mich. 2018) (finding allegations that defendant disclosed all of its customers' information, including the plaintiffs' information, to third-party data aggregators and appenders, data cooperatives, aggressive marketers, and other third-party renters of customer lists, together with a copy of data card reflecting defendant's advertising of such information for sale and rental, adequately alleged unauthorized disclosures of the plaintiff's

14

information to third parties in violation of violation of Michigan's Preservation of Personal Privacy Act); *Batts v. Gannett Co.*, 2023 WL 3143695, at *4–5 (E.D. Mich. Mar. 30, 2023) (same); *Russett v. NTVB Media, Inc.*, No. 22-10352, 2023 WL 6315998, at *2 (E.D. Mich. Sept. 28, 2023) (same); *Gaines v. Nat'l Wildlife Fed'n*, No. 22-11173, 2023 WL 3186284, at *4 (E.D. Mich. May 1, 2023) (same); *Nock v. Boardroom, Inc.*, No. 22-CV-11296, 2023 WL 3572857, at *4 (E.D. Mich. May 19, 2023) (same); *Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 452 (S.D.N.Y. 2016) (same); *Piper v. Talbots, Inc.*, 507 F. Supp. 3d 339, 343-44 (D. Mass. 2020) (denying a motion to dismiss where the complaint alleged that the defendant "sold PII of plaintiffs and other customers to third parties without notice or consent" and that, as a result, the plaintiffs "received unwanted junk mail and telephone solicitations," which the court found "allow[ed] for a reasonable inference that [plaintiffs PII] was disclosed to third parties" in violation of Virginia's privacy law).

The Motions on this basis should therefore be denied.

### III.    The FAC Adequately Alleges Each Defendant's Liability

Defendant MVD, grasping at straws, makes a final argument that Plaintiff was required and failed to allege the existence of a joint venture under Pennsylvania law. ECF No. 27-1. This argument fails most glaringly because Defendant MVD ignores the doctrines of alter ego and vicarious liability and fundamentally mischaracterizes the applicable legal standards for motions to dismiss. As noted above, courts must accept the FAC's well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff at the motion to dismiss stage. Defendant MVD's motion improperly seeks to have this Court weigh evidence and make factual determinations that are inappropriate at this procedural stage. For these reasons, as explained in more detail below, Defendant MVD's motion should be denied.

The general rule is that a shareholder or a parent corporation is not personally liable for corporate or subsidiary obligations. *See Kaplan v. First Options of Chicago, Inc.,* 19 F.3d 1503, 1520–21 (3d Cir. 1994). The general rule does not apply "when the court must prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime, . . . or when the parent so dominated the subsidiary that it had no separate existence[.]" *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001). The latter example is known as the "alter ego" theory of liability. *See Am. Bell Inc. v. Fed'n of Tel. Workers of Pennsylvania*, 736 F.2d 879, 886 (3d Cir. 1984). To plead "alter ego" liability, the complaint should allege facts sufficient for the plausible inference that the following factors are satisfied: "gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder." *Pearson*, 247 F.3d at 485. These factors are not exhaustive, and no single factor is dispositive, so courts should "consider whether veil piercing is appropriate in light of the totality of the circumstances." *Trinity Indus., Inc. v. Greenlease Holding Co.*, 903 F.3d 333, 365 (3d Cir. 2018).

Here, the FAC alleges facts sufficient at this stage to justify piercing the corporate veil because Defendants Gotham and MVD acted as the alter ego of Defendant OSVI, and alternatively because all Defendants are vicariously liable. Defendant MVD does not address either of these theories in its Motion. *See* ECF No. 27-1. The FAC first alleges that Defendants Gotham and MVD entered into a joint venture in March 2023. ECF No. 19 at ¶ 20. The FAC then alleges a complete lack of corporate formalities because Defendants Gotham and MVD "jointly owned,

operated, controlled, and directed every aspect of Defendant OSV's business and day-to-day activities, including the sale of prerecorded video materials to consumers on the oldies.com website and the disclosures of oldies.com customers' Personal Viewing Information to third parties, including to Meta and to the various renters, exchangers, and purchasers of lists containing customers' Personal Viewing Information."[3] *See id.*  Plaintiff further alleges Defendant OSVI was left "no independent control over its business activities" including operation of the website, the sale of prerecorded videos, and disclosure of customers' personally identifiable information.  *See id.*

These allegations are further supported by the language demonstrating Defendant OSVI is nothing more than a "corporate façade" based on the Privacy Policy, which mentions that the term "Oldies.com" includes Defendant Old School Ventures, Inc., its affiliates, and subsidiaries.  *See id.* at ¶ 21.  Plaintiff notes, however, that Defendants altered the language in their Privacy Policy after the litigation commenced because a copy of the privacy policy existing at the time this suit was commenced was saved during undersigned counsel's pre-suit investigation, and that version reveals a change in the second sentence.  *See* Declaration of Elliot Jackson ("Jackson Decl.") at ¶ 3.  This post-litigation alteration of the Privacy Policy is itself evidence supporting the inference that Defendants were attempting to obscure their interconnected operations.

Plaintiff respectfully requests that this Court consider the 2024 Privacy Policy and the 2025 Privacy Policy as sufficiently incorporated by reference in the FAC or by taking judicial notice of the same because those policies are integral to the claims in the FAC, are referenced extensively in the FAC, and their accuracy cannot be questioned.  *See Buck v. Hampton Twp. Sch. Dist.*, 452

---

[3] The record also confirms the existence of a lack of corporate formalities between the three Defendants because Ed Seaman accepted service documents on behalf of each of the three Defendants in this case at the same address, 203 Windsor Rd, Pottstown, PA 19464.  *See* ECF Nos. 5, 6, 28.

F.3d 256, 260 (3d Cir. 2006) (reaffirming that a district court may "consider documents that are attached to or submitted with the complaint . . . and any "matters incorporated by reference or integral to the claim, [and] items subject to **judicial notice**[.]"); *Ahtasham v. Lyft Inc.*, No. CV 24-1673, 2024 WL 4173782, at *2 (E.D. Pa. Sept. 12, 2024) (considering extrinsic material attached to the complaint at the motion to dismiss stage); *Fuhrman v. Mawyer*, No. 1:21-CV-02024, 2023 WL 5672314, at *12 (M.D. Pa. Sept. 1, 2023); (finding website incorporated by reference into the complaint) *Azurous, Inc. v. Kennedy Int'l, Inc.*, No. CV 23-04770 (ZNQ) (JBD), 2024 WL 3219663, at *9 (D.N.J. June 28, 2024) (same). The second sentence in the 2024 policy, which was available at the same link that the 2025 policy is currently available, states, "The terms 'OLDIES.com,' 'we,' and 'us' include Gotham Distributing Corporation d/b/a OLDIES.com and our affiliates and subsidiaries." *See* Jackson Decl., ¶ 3. The 2025 version reveals a change from "Gotham Distributing Corporation" to "Old School Ventures, Inc." *See* Jackson Decl., ¶ 4. This distinction is crucial because Defendant Gotham's previous operation of the website, as conceded in the 2024 privacy policy, coupled with Defendant MVD's participation in the joint venture as early as 2023, is sufficient to support the inference that the term "affiliate" as used in the policy refers to Defendant MVD. *See* ECF No. 19 at ¶¶ 20-22. MVD's argument that the FAC contains only "blithe" claims without factual support is therefore demonstrably false.

These well-pleaded allegations must be accepted as true and demonstrate the plausibility of each Defendant's liability. *See e.g., McGovern v. Jack D's, Inc.*, No. CIV.A. 03-5547, 2004 WL 228667, at *4 (E.D. Pa. Feb. 3, 2004) (finding that an "allegation that the actions of one are attributable to the other constitutes sufficient notice pleading to withstand a [m]otion to [d]ismiss"), *opinion modified on reconsideration*, No. CIV.A. 03-5547, 2004 WL 632703 (E.D. Pa. Feb. 25, 2004). This conclusion is further reinforced by decisions in this Circuit where courts

have applied the "alter ego" liability to circumstances involving multiple defendants being alleged to have participated in unlawful conduct. *See Sugartown Worldwide LLC v. Shanks*, 129 F. Supp. 3d 201, 207 (E.D. Pa. 2015) (denying motion to dismiss alter ego claim where complaint alleged two entities "dominated and controlled" a third entity for an unlawful purpose); *Powervar, Inc. v. Power Quality Scis., Inc.*, No. CV 20-5908, 2021 WL 2986417, at *6 (E.D. Pa. July 15, 2021) (motion to dismiss alter ego claim denied where the complaint alleged the defendant "abused the corporate form" for an unlawful purpose).

Alternatively, the FAC's allegations are sufficient to support a vicarious liability theory based on agency principles. "An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent." *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1434 (3d Cir. 1994) (citation omitted). The FAC alleges the existence of a joint venture arrangement by Defendants Gotham and MVD to operate Defendant OSVI, under which Defendants Gotham and MVD governed, controlled, and dominated all aspects of its day-to-day operations. *See* ECF No. 19 at ¶¶ 20-22. Courts in this Circuit have found that analogous allegations were sufficient to allege vicarious liability at the motion to dismiss stage. *See e.g.*, *Doe (K.R.D.) v. Wyndham Hotels & Resorts, Inc.*, No. CV 24-8174 (SDW) (JBC), 2025 WL 1166519, at *4 (D.N.J. Apr. 21, 2025) (denying a motion to dismiss vicarious liability theory where the complaint alleged the existence of a franchise agreement and the principal "retained the right to control many aspects of [the subsidiary's] operations[.]"); *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 196 (E.D. Pa. 2020) (same).

As a final matter, Defendant MVD argues that Plaintiff failed to allege each element of a joint venture under Pennsylvania law. Defendant MVD cites two cases as substantive support for its argument, *Odyssey Contracting, Corp. v. Hercules Painting Co., Inc.*, No. 2:17CV1255, 2022

19

WL 5237196, at *8 (W.D. Pa. Sept. 2, 2022) and *Combustion Sys. Servs., Inc. v. Schuylkill Energy Res., Inc.*, No. CIV.A. 92-4228, 1993 WL 514496, at *1 (E.D. Pa. Dec. 1, 1993), which are procedurally distinguishable because they were decided after a bench trial and the summary judgment stage, respectively, not at the motion to dismiss stage.  MVD's reliance on post-trial and summary judgment cases is misplaced because these decisions applied a more stringent evidentiary standard than the notice pleading requirements applicable here.

The more instructive case is *Streamline Bus. Servs., LLC v. Vidible, Inc.*, No. CIV.A. 14-1433, 2015 WL 3477675, at *3 (E.D. Pa. June 2, 2015), which involved a motion to dismiss claims based on the existence or non-existence of a joint venture.  In *Streamline*, the court recognized the Third Circuit's well-established rule that the "joint venture is an amorphous legal doctrine."  *See id.* at *4 (quoting and citing *Beavers v. West Penn Power Co.*, 436 F.2d 869, 872 (3d Cir. 1971)). The court explained that determining whether a joint venture exists "depends on the facts and circumstances of each particular case and no fixed and fast rule can be promulgated to apply generally to all situations." *See id.* (citing *Waldman v. Shoemaker,* 367 Pa. 587, 80 A.2d 776, 778 (Pa. 1951)).  This flexible, fact-specific approach counsels in favor of denying MVD's motion to dismiss.

In *Streamline Bus. Servs., LLC*, the court determined a joint venture was properly alleged based on five observations from the allegations in Streamline's complaint: (1) the existence of a joint venture agreement, (2) contribution by both parties, (3) shared profits, (4) joint control over the online video exchange, and (5) the joint venture related to a single business enterprise for profit. 2015 WL 3477675, at *5-6.; *Beavers*, 436 F.2d at 873 ("[A joint venture] is sometimes said to be an association of parties to engage in a single business enterprise for profit.").  Every one of the observations from *Streamline* is present here.  The FAC alleges the existence of a joint venture

agreement entered in March 2023.  *See* ECF No. 19 at ¶ 20.  The FAC alleges Defendant Gotham provided operational support for the www.oldies.com website, which is confirmed above by the 2024 policy.  *See id.* at ¶ 21.  The FAC alleges Defendant MVD contributed physical space for the joint venture to operate within its warehouse—a substantial contribution of real property and facilities.  *Id.* at ¶ 19.  MVD's argument that this does not constitute a "contribution" because it might be a rental arrangement, ECF No. 27-1 at 4, is pure speculation that is unsupported by the pleadings and otherwise creates a factual dispute inappropriate for resolution at this stage.  The FAC alleges joint operations at MVD's facilities, which supports the inference of contribution to the enterprise. *Id.* at ¶ 20.  The FAC then alleges that Defendants shared profits from the unlawful disclosure of customers' personally identifiable information.  *Id.* at ¶¶ 7, 43, 97.  Those shared profit allegations are bolstered by the FAC's allegation that the joint venture was formed "for the purpose of enabling the two companies to collectively sell their respective products to consumers and to then monetize...the Personal Viewing Information," clearly establishing shared profits and mutual benefit.  *Id.* at ¶ 20.  The FAC further alleges domination and control over the www.oldies.com website by Defendants MVD and Gotham.  *See id.* at ¶¶ 20, 22 ("Accordingly, since March 29, 2023, Defendant OSV has exercised no independent control over its business activities, but rather has operated as a mere conduit of Defendants Gotham and MVD, under their exclusive control and direction").  Last, the FAC alleges the joint venture concerns a single business enterprise for profit, which is the operation of a new music and film direct-to-consumer business.  *See id.*  Defendants Gotham and MVD's creation and operation of the OLDIES.com business constitute the single business transaction contemplated by Pennsylvania law. *See McRoberts v. Phelps*, 138 A.2d 439, 443-444 (Pa. 1958). MVD's piecemeal attack on individual elements without a citation to relevant authority ignores the holistic analysis required under

Pennsylvania joint venture law and the liberal pleading standards under the Federal Rules of Civil Procedure that apply at this procedural stage.  Because the allegations are directly analogous to *Streamline*, this Court should likewise not dismiss the FAC.

## **CONCLUSION**

The FAC's detailed factual allegations, when accepted as true and viewed in the light most favorable to Plaintiff, clearly establish an actionable VPPA claim for relief against each Defendant under multiple theories of liability.  Therefore, for the reasons stated herein, Plaintiff respectfully requests that the Court deny Defendants' motions to dismiss in their entirety.

Dated: July 8, 2025

Respectfully submitted,

/s/ *William E. Hoese*
William E. Hoese
KOHN, SWIFT & GRAF,  P.C.
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 238-1700
Facsimile: (215) 238-1986
whoese@kohnswift.com
ekohn@kohnswift.com

-and-

Elliot O. Jackson
Florida Bar No. 1034536
HEDIN LLP
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone:    (305) 357-2107
Facsimile:    (305) 200-8801
ejackson@hedinllp.com

*Counsel for Plaintiff and Putative Classes*