IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH MULL, *Plaintiff,* v. GOTHAM DISTRIBUTING CORP., et al., *Defendants.* | CIVIL ACTION NO. 24-6083 |

**Pappert, J.**                                               September 22, 2025

**MEMORANDUM**

Joseph Mull, individually and on behalf of two putative classes, sues Gotham Distributing Corporation, MVD Entertainment Group and Old School Ventures, Inc. for allegedly violating the Video Privacy Protection Act by disclosing Mull's personal information and the title of a video he purchased. Gotham, MVD and Old School Ventures each move to dismiss Mull's Amended Complaint. The allegations against each defendant and the arguments in the motions to dismiss are nearly identical, so the Court considers the motions together and grants them in part for the reasons that follow.

I

MVD "owns and operates" a "music and movie distribution firm." (First Am. Compl. ¶ 18, Dkt. No. 19.) Mull alleges that Gotham and MVD "entered into a joint enterprise to form a new music and film direct-to-consumer business under the name Old School Ventures, Inc." (*Id.* ¶ 20.) Old School Ventures ("OSV") sells videos via the website "oldies.com." (*Id.* ¶¶ 20, 22.) Mull claims that Gotham and MVD "jointly own[], operate[], control[], and direct[] every aspect" of "OSV's business and day-to-day

1

activities." (*Id.* ¶ 20.) He alleges that OSV exists as a "conduit" for Gotham and MVD "to collectively sell their respective products to consumers" and "monetize" the personal information of those who buy their products. (*Id.*)

Mull contends the defendants rent, sell or disclose to third parties "their customers' . . . names and addresses" and "information reflecting the titles of specific videos and other audio-visual products that each of their customers has purchased." (*Id.* ¶¶ 49, 50.) Mull says they also transmit information about their customers to Meta via code embedded on oldies.com which "monitor[s] and track[s] the actions taken by visitors . . . and report[s] them back to Meta." (*Id.* ¶¶ 56, 58.) This code is known as Meta Pixel. (*Id.* ¶ 58.) Meta Pixel allows Meta to match the purchasing activity of website visitors to the website visitors' Facebook accounts via their Facebook ID. *See* (*Id.* ¶¶ 59, 66). A Facebook ID number is a "unique and persistent identifier." (*Id.* ¶ 59.)

In August of 2023, Mull bought a video off oldies.com, providing "his name, email address, and home address for shipment" of the video. (*Id.* ¶ 12.) Mull never consented to the disclosure of his personal information, nor the disclosure of the videos that he purchased on the website. (*Id.* ¶ 13.) Mull claims that his personal information was disclosed to Meta and to unidentified buyers via defendants' sale or rental of a mailing list. (*Id.* ¶¶ 14–15.)

II

The Court assesses the sufficiency of a pleading before discovery under Federal Civil Rules 8 and 12. Rule 8(a)(2) provides that a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.

Civ. P. 8(a)(2). And Rule 12(b)(6) permits a district court to dismiss a complaint that fails "to state a claim upon which relief can be granted." *Id.* 12(b)(6). Taken together, the two rules require the plaintiff to allege sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The first step in determining whether a plaintiff has stated a plausible claim is to "tak[e] note of the elements" underlying his claim. *Santiago v. Warminster Township*, 629 F.3d 121, 129–30 (3d Cir. 2010) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 675 (2009)) (alteration in original). The next step is to examine the plaintiff's complaint and determine whether the factual allegations "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

Plausibility requires the plaintiff to plead sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Plaintiffs do not meet the plausibility burden when the facts alleged are "merely consistent with a defendant's liability" or show nothing "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quotation marks and citation omitted). In gauging the plausibility of a claim, the Court must accept as true all well-pleaded factual allegations, construe those facts in the light most favorable to the plaintiff, and draw reasonable inferences from them. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 n.2 (3d Cir. 2016).

III

The Video Privacy Protection Act protects "personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials." *In re Nickelodeon Consumer Priv. Litig.,* 827 F.3d 262, 278 (3d Cir. 2016) (quoting S. Rep.

No. 100-599, at 5 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 4342-1, 4342-10). Mull contends Gotham, MVD and OSV violated the VPPA by knowingly disclosing personally identifiable information to "various third parties, without providing the requisite notice or obtaining the requisite consent." (First Am. Compl. ¶ 100.)

To state a claim for unlawful disclosure under the VPPA, a plaintiff must allege that a "video tape service provider . . . knowingly disclose[d], to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1). Personally identifiable information "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider," *Id.* § 2710(a)(3), and is "the kind of information that would readily permit an ordinary person to identify a specific individual's video-watching behavior." *In re Nickelodeon,* 827 F.3d at 290.

IV

Defendants move to dismiss on the grounds that Mull (1) does not plausibly allege the knowing disclosure of personally identifiable information including his Facebook ID to Meta; and (2) Mull does not plausibly allege the knowing disclosure of personally identifiable information via a mailing list allegedly offered for sale by the defendants.

A

Mull fails to state a claim for the knowing disclosure of his personally identifiable information via his Facebook ID. Mull alleges that the "[Facebook ID] and the title of the prerecorded video material" that "Defendants . . . provided to Meta" permits "any ordinary person" to learn his identity and the title of the video he bought.

4

(First Am. Compl. ¶ 78.)  He includes in his Amended Complaint an image of "exemplar source code" to "illustrate Defendants' disclosures to Meta."  (First Am. Compl. ¶ 80.)  Mull alleges that "Defendants disclosed to Meta Plaintiff's [Facebook ID] coupled with the specific title of the . . . video materials he purchased."  (*Id.* ¶ 14.)

But Mull does not allege facts that establish where his Facebook ID is in the string of letters, symbols and numbers in the "exemplar source code."  Nor does he adequately allege that the disclosure of his Facebook ID specifically identifies him.  He does not state what information is, or was, on the Facebook page associated with the Facebook ID he says was disclosed to Meta.  *See Ghanaat v Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023).  And Mull fails to establish *how* the disclosed information would "readily permit an ordinary person" to identify his "video-watching behavior."  *In re Nickelodeon*, 827 F.3d at 290.  Based on Mull's allegations and applying the *Nickelodeon* ordinary person standard, Mull fails to allege that an ordinary person could identify him and the specific video he bought.

The Second Circuit Court of Appeals recently adopted *Nickelodeon's* standard and held that a Facebook ID and video title embedded in computer code does not constitute personally identifiable information, in part because only a sophisticated company could decipher the information in the code.  *Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 51–52, 54–55 (2d Cir. 2025); *Hughes v. Nat'l Football League*, No. 24-2656, 2025 WL 1720295, at *2 (2d Cir. June 20, 2025) (explaining that "*Solomon* effectively shut the door for Pixel-based VPPA claims.").[1]  To survive a motion to dismiss, Mull

---

[1] In *Braun v. Philadelphia Inquirer, LLC* the court applied the *Nickelodeon* ordinary person standard to similar facts and declined to grant a motion to dismiss, explaining that evaluating the issue on a more developed factual record would be appropriate.  No. 22-4185, 2023 WL 7544160, at *3–4 (E.D. Pa. Nov. 13, 2023).  But Braun's complaint describes where the Facebook ID can be found

must allege facts that would permit the inference that an ordinary person—not a sophisticated technology company—could identify his video watching habits. Because he has not, the motions to dismiss are granted with respect to the portion of Mull's claim related to information allegedly disclosed via Meta Pixel, though Mull may again amend.

B

Mull plausibly alleges a violation of the VPPA with respect to the sale of his personal information and video buying history via a mailing list. In addition to the allegations related to his Facebook ID, Mull claims the defendants violated the VPPA by disclosing his personally identifiable information to, among others, "data aggregators," namely through the disclosure of information contained in a mailing list. (First Am. Compl. ¶¶ 15, 50–53.) Here, Mull's allegations state a plausible claim that his protected information was disclosed to third parties. Mull contends that his "Personal Viewing Information" was "sold, rented, exchanged . . . transmitted, and/or otherwise disclosed" to various third parties. (*Id.* ¶ 15.) He includes in his Amended Complaint a screenshot of a "data card" posted by the defendants on a website which advertises the sale or rental of an "OLDIES.com mailing list." (*Id.* ¶ 51.) Mull claims the mailing list includes "each person's name and address as well as the particular prerecorded audio-visual product(s) they purchased from Defendants' website . . ." (*Id.* ¶ 52.)

---

in the screenshot of code and how an ordinary person might use that information to access a specific Facebook profile. Consolidated Class Action Complaint at ¶ 51–52, *Id.*, Dkt. No. 28; s*ee also* Class Action Complaint at ¶ 25–30, *Mendoza v. Caesars Ent., Inc.*, No. 23-3591, 2024 WL 2316544 (D.N.J. May 22, 2024), Dkt. No. 1 (same). Mull fails to do so.

6

The screen shot of the "data card" includes the notation "COUNTS THROUGH 02/20/2024" which is inclusive of the date Mull purchased a video from the website. (*Id.* ¶¶ 12, 51.) The advertisement describes the source of the mailing list as "OLDIES.com, a hybrid retailer" and says the list may "align[] with nostalgia, luxury, or a specific lifestyle." (*Id.* ¶ 51.) These descriptions in the context of the mailing list advertisement and Mull's other factual allegations permit the inference that his video purchase is included in the mailing list in addition to his personally identifiable information.

## V

MVD also argues, correctly, that Mull does not plausibly allege a joint venture between MVD and Gotham. A joint venture arises by express or implied contract and is established by factors including (1) contribution by the parties to the joint venture, (2) profit sharing between the parties, (3) "joint proprietary interest and right of mutual control over the subject matter of the enterprise" and (4) "a single business transaction rather than a general and continuous transaction." *McRoberts v. Phelps*, 391 Pa. 591, 599, 138 A.2d 439, 443–444 (1958) (quotation marks and citation omitted); *see Beavers v. W. Penn Power Co.*, 436 F.2d 869, 872–873 (3d Cir. 1971). Joint ventures are an "amorphous legal doctrine," and the factors are not strictly applied. *See Streamline Bus. Servs., LLC v. Vidible, Inc.*, No. 14-1433, 2015 WL 3477675, at *3 (E.D. Pa. June 2, 2015) (quoting *Beavers*, 436 F.2d at 872). Whether a joint venture exists depends on the facts of each case and no one factor alone is dispositive to the analysis. *In re PCH Assocs.*, 949 F.2d 585, 599 (2d Cir. 1991) (applying Pennsylvania law).

Mull insufficiently alleges the existence of a joint venture with respect to the contribution and profit-sharing factors. He only occasionally alleges MVD or Gotham

did anything on its own. While he alleges a date certain by which the two entities "owned, operated, controlled, and directed every aspect" of "OSV's business and day-to-day activities," (First Am. Compl. ¶ 8), he does not sufficiently describe the express or implied contract between MVD and Gotham which allegedly created OSV. Despite allegations that Gotham and MVD operate OSV to "sell their respective products," (*Id.* ¶ 20), Mull fails to allege facts sufficient to permit the inference that contributions were made by both Gotham and MVD to the alleged joint venture. And although the Amended Complaint references defendants' collective profits, *see* (*Id.* ¶¶ 7, 20, 50, 97), Mull insufficiently alleges profit sharing among the parties to the joint venture.

Two of the four joint venture factors—joint control and the "single business transaction" factor—are sufficiently pled. Mull says OSV was under Gotham's and MVD's complete control and that OSV "exercised no independent control over its business activities." (*Id.* ¶ 20.) And the "single business transaction" factor is plausibly inferred from Mull's explanation of revenue generation via a single website. (*Id.* ¶ 22.); *see Streamline,* 2015 WL 3477675 at *6. In sum, Mull fails to sufficiently allege MVD and Gotham's role in the VPPA violations he primarily attributes to OSV. Mull may amend to more specifically allege facts describing the relationship between the defendants.

VI

A court should grant a plaintiff leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). This rule expresses "a preference for liberally granting leave to amend" unless "amendment would cause undue delay or prejudice, or . . . would be futile." *Oran v. Stafford,* 226 F.3d 275, 291 (3d Cir. 2000). Amendment is

futile when "the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).  The decision whether to grant or deny leave to amend is within the sound discretion of the district court.  *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001).

Granting leave to amend would not cause undue delay or prejudice, and the Court cannot say at this point that amendment would be futile.  Mull may amend his complaint if he can allege facts which could overcome the shortcomings identified in this Memorandum.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*

Gerald J. Pappert, J.